DISSENTING OPINION,
Delivered by
Mr. Justice Sneed.
The plaintiff’s intestate was mortally injured by the defendant's train on the 31st of January, 1867, *835 and died of said injuries a few days afterward. He left a widow and children, but, there was no administration on his estate until about the 26th of January, 1870, nearly three years after 'the injury which resulted in his death. The plaintiff was qualified as administrator on. the 26th of January, 1870, and this action was instituted on the day afterwards. The chief question raised by the pleadings is, Whether the Statute of Limitations of one year, which applies to an action of this character, began to run from the moment of the injury, or from the moment of the qualification of the administrator? This depends upon the proper •construction of our Statute, which abrogates the rule of the Common Law, that “personal actions die with the person,” and gives the action in such eases to the administrator of the person, who dies from such injury, for the benefit of his widow and next of kin. The Statute under which the right of action accrued, in this case is in these words: “ The right of action, which a person, who dies from injuries received from another, or whose death is caused by the wrongful ■act or omission of another, would have had against ■the wrong-doer, in case death had not ensued, shall not abate or be extinguished by his death; but shall pass to his personal representative, for the benefit of his widow and next of kin, free from the claims of his creditors.” Code, Section 2291. In other sections of the Code it is provided that actions, for injuries to the person, shall be commenced within one year after the cause of action has accrued. Code, Secs. 2769, 2772. As applied to cases of this kind, the question is one *836 of much difficulty. The general rule is, that when-the Statute begins to run in the lifetime of the intestate, his death does not stop it. As applied to-actions ex contractu, we 'can easily appreciate the wisdom of this rule; but as applied to cases of this kind, where the intestate is by the injury mortally hurt; when, perhaps, bereft of both physical and mental capacity, he merely languishes to his death, the consequences of such a rule would be not only harsh, but contrary to reason. It is manifest that the Legislature intended to create an entirely new right of action, to redress the grievance and injury inflicted by the homicide itself, for the benefit of those to whom the life of the deceased was valuable: — the gravamen being the consequential injury to the widow, children, or next of kin, resulting from the homicide itself.
The Court, it is true, can make no exceptions to the Statute which have not been made by the Statute itself. But it is, nevertheless, the duty of the Courts so to construe Statutes of Limitations as to secure and subserve a meritorious right and remedy, rather than defeat and destroy them. We might suppose a case where the injured party survives his wounds just one hour, and, according to the strict rule, at the moment of his death the Statute has been running one hour, and his representative is qualified just one year after the injury is inflicted, and one year and one hour after the Statute has begun to run. According to the strict rule contended for, a meritorious cause of action is thus defeated, when the intestate himself was, from his physical prostration, utterly incapable of sue- *837 -ing during the brief interval of life left him after 'the injury was inflicted. Certainly the law does not •contemplate such consequences . as these. The observation, which we find in one of the cases, that the •decisions on this subject -are so conflicting, or rather so controlled by particular circumstances, that no inflexible rule can be extracted therefrom, is specially applicable to personal actions of this character. And we think the rule stated by Mr. Bouvier is the sound one: — that if, when the right of action would other-, wise accrue and the Statute begin to run, there is no person who can exercise the right, the Statute does not begin to run until there is such person. 2 Bouv. L. D., 58; 10 Yerg., 383.
The term, cause of action, implies not only a right of action, but, also, that there is some person in existence who is qualified to institute process. Where -there is no person to sue, no laches can. be implied; and applying in such case the Statute of Limitations, would be extreme injustice, and contrary also to the conclusions of reason. Ang. Lim., 45; Sherman v. Western Stage Co., 24 Iowa, 517.
The Statute of Limitations is a canon of repose, and is predicated upon the idea of laches in the party •upon whom the right of action falls. How can laches be imputed to a dying man ? To one who, having received a mortal injury, simply abides the period of his dissolution? How can such an one, even assuming that his mental faculties be clear, be onerated with the assertion of a legal ‘ demand in the Courts of justice, just as.he is entering the portals of Eternity? *838 I cannot sanction a doctrine so repulsive to Right and Reason. I have no doubt that the Legislature had in view all these considerations in framing this Statute, and that its intention was, that the right of action in such cases, where death ensues, is devolved upon the-administrator, and is barred in one year after his qualification. Collins v. E. T., Va. & Ga. R. R. Co., MS., Knoxville, 1874.* When the interpretation of a Statute is doubtful, it is against the policy of the law, and all the traditions of the Courts, to give it such a construction as must necessarily defeat a remedy. Pond v. Trigg, 5 Heis., 537.
I can not concur in the opinion of a majority of the Judges in this case.

 Post, 841.